Frances GLUCK, Plaintiff,

v.

Andrew J. FRANKEL, Morton A. Sweig, Paul Milstein, Arthur E. O'Donnell, Eugene R. Black, Emanuel Gerard, Salim L. Lewis, Martin D. Payson, Milton C. Weisman, Charles A. Agemian, Lawrence B. Buttenwieser, Allan B. Ecker, Jay Emmett, Steven J. Ross, David H. Horowitz, Caesar P. Kimmel, Jacob S. Liebowitz, Edward Rosenthal, Alfred R. Stern and Warner Communications, Inc., Defendants.

No. 77 Civ. 1071.

United States District Court, S. D. New York.

Nov. 17, 1977.

Garwin & Bronzaft by Bertram Bronzaft, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison by Max Gitter, New York City, for defendants Agemian, Black, Emmett, Gerard, Horowitz, Kimmel, Lewis, Liebowitz, Rosenthal, Ross and Stern.

Proskauer, Rose, Goetz & Mendelsohn by David I. Goldblatt, New York City, for defendant Milstein.

Kelley, Drye, Warren, Clark, Carr & Ellis by Charles E. McTiernan, Jr., New York City, for defendants Frankel and Sweig.

Gold, Farrell & Marks by Leonard Marks, New York City, for defendant Warner Communications, Inc.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff, a shareholder of defendant Warner Communications, Inc. ("Warner") filed this action on March 4, 1977 derivatively on behalf of Warner. The individual defendants are members of Warner's Board of Directors and four are present or former officers of National Kinney Corp. ("Kinney"). Plaintiff asserts claims predicated upon Section 7 of the Securities Exchange Act of 1934 ("Act"), Regulations G and X promulgated by the Federal Reserve Board ("Board"), and state law.

Subject matter jurisdiction is alleged to be based on Section 27 of the Securities Exchange Act of 1934, diversity of citizenship and pendent jurisdiction. It is clear, however, and conceded at the hearing before me that there is not complete diversity of citizenship.

Certain defendants have moved to dismiss the derivative claim, *inter alia,* for failure to state a claim upon which relief may be granted.

This motion turns on whether this Court will imply a federal private action in favor of a creditor corporation, in a shareholder's derivative action in which plaintiff charges her own corporation with violation of the margin requirements in connection with extension of credit. We conclude no such private action may be implied.

The facts, construed most favorably, are as stated below.

Until September 1971, Kinney was a wholly-owned subsidiary of Warner. In that month, Warner sold and distributed approximately 51% of Kinney's common stock through a public offering. Contemporaneously, Warner sold 140,000 shares of Kinney common stock to four senior Kinney executives. Under the terms of the sale to these executives, defendants here, the shares were sold at the public offering price of $15.50 per share, with each purchaser paying $.50 per share at the time of purchase and executing a promissory note for the balance payable to Warner on October 1, 1976 or thirty days after his termination

of employment with Kinney, whichever occurred first. The notes bore 4% interest, and the Kinney shares were deposited with Warner as collateral for payment of the debt represented by the notes. By this transaction, Warner ended the parent-subsidiary relationship, and provided for a continuity of management for its disowned child.

Prior to the October 1, 1976 due date, two defendants, O'Donnell and Milstein, terminated their employment with Kinney, failing to pay their notes within thirty days as required by the terms of sale. As to O'Donnell, Warner has taken steps under the Uniform Commercial Code to retain title to the 20,000 shares which it held as collateral. These shares have declined in price dramatically. However, the complaint alleges that Warner has not sought to recover the amounts owed under his note. With regard to defendant Milstein, the date on which payment was due was postponed by Warner's Board of Directors until September 30, 1977. The due dates of the notes of the two executives who remained employed by Kinney were postponed for one year from the original stated due date, until September 30, 1977. This date passed without payment of the outstanding debts. The Court is advised that repayment of the notes is the subject of "ongoing negotiations," whatever that signifies.

Plaintiff contends that in the postponement of the due dates for three of the promissory notes there were unlawful extensions and acceptances of credit, made in contravention of Regulations G and X of the Board and Section 7 of the Act. Furthermore, plaintiff asserts that in failing to require payment on all four notes when due, Warner's Board of Directors caused waste and spoilation of corporate assets and an unjust enrichment of the four Kinney executives. Accordingly, plaintiff seeks an accounting from the defendants to the corporation for the principal and interest due on the outstanding notes.

"For the purpose of making out a cause of action in favor of the corporation, the stockholder stands in the corporation's shoes and must ground the suit on the corporation's rights and a wrong thereto." 13 Fletcher, *Cyclopedia Corporations* (Perm. Ed.) § 5947. *Ross v. Bernhard*, 396 U.S. 531, 534–35, 90 S.Ct. 733, 24 L.Ed.2d 729 (1969); *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522–23, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

Though Section 7 of the Act is silent as to private civil remedies, causes of action in favor of individuals for violations of the margin requirements have sometimes been implied. Whether plaintiff states a claim then is dependent upon whether we should imply a federal remedy in favor of Warner—the creditor in these allegedly unlawful loan or margin transactions.

This is a case of first impression. In support of her concededly novel approach, plaintiff seeks to apply, and extend, the reasoning adopted in those actions in which private civil remedies have been implied on behalf of debtor-investors. *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971) (Pearlstein I), held that while protection of investors was a purpose only incidental to the legislative intent in enacting Section 7, private actions by investors are an effective and valid means of enforcing the margin requirements. The opinion stressed that the "margin requirements forbid a broker to extend undue credit but do not forbid customers from accepting such credit." *Id.* at 1141. However, the subsequent enactment of Section 7(f) of the Act in 1970 and the promulgation of Regulation X by the Board in 1975 have made the receipt of credit in violation of the margin requirements also unlawful. This placement of the creditor and the investor *in pari delicto* has led the Second Circuit to suggest, "[t]he effect of these developments is to cast doubt on the continued viability of the rationale of our prior holding [in *Pearlstein I*]." *Pearlstein v. Scudder & German*, 527 F.2d 1141, 1145, n. 3 (2d Cir. 1975) (*Pearlstein II*.) The clear implication of *Pearlstein II* is that unless plaintiff is a member of a class which Congress has sought to protect, at least secon-

darily, a private remedy should not be implied in his favor, in connection with loans or credit extended to buy or carry securities.

■ Plaintiff further asserts that a shareholder's derivative suit represents a valuable tool for effectuating the primary purpose of Section 7—preventing the infusion of excessive credit into the securities market. Arguing by analogy from *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), plaintiff suggests that a private right of action should be implied where it is necessary to carry out the legislative purpose. *Borak* permitted a cause of action for money damages in favor of market investors for false and misleading proxy statements. However, it was the finding that protection of investors was a chief purpose of Section 14(a) of the Act, which led the Court to conclude that an implied remedy is "necessary to make effective the Congressional purpose." *Id.* at 433, 84 S.Ct. at 1560. Thus, *Borak*, like *Pearlstein*, cannot provide support for plaintiff's position absent a showing that corporate creditors or margin lenders are a class for which Congress, in enacting Section 7, intended protection from credit abuses. The legislative history of the margin requirements is to the contrary: "The main purpose of these margin provisions is not to increase the safety of security loans for lenders." H.R.Rep.No.1383, 73rd Cong.2d Sess. 8 (1934). Nor was Section 7 intended to protect corporations against waste or breach of fiduciary duty by corporate officers and directors in granting extensions of credit.

In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1974), the Supreme Court announced a four-part test for determining whether a private remedy is to be implied in a statute not expressly providing such remedy. The pertinent inquiries are these:

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (Citations omitted). *See also Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 37–41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). (Emphasis in original).

■ Plaintiff's derivative claim cannot satisfy these criteria. Neither corporate creditors nor their shareholders are a class for whose *especial* benefit Section 7 was enacted. Moreover, the legislative history contains no suggestion that such a private right of action was intended. And, while we accept plaintiff's assertion that a shareholder's derivative action for credit abuses is a useful tool, we cannot agree that it is either a necessary or an appropriate method of effectuating the legislative intent underlying the margin provisions. Plaintiff has failed to convince this Court that the Congressional purpose is likely to be undermined absent this proposed method of private enforcement. Indeed, it would be anomalous to allow an action for damages in favor of the party whose activities Congress intended to confine; that being the lender or extender of credit in stock purchase arrangements. Finally, the actual claim of injury to the corporation here is for waste and spoilation of assets. Such a cause of action is one "traditionally relegated to state law." We assume for purpose of the motion a point not conceded, namely, that the aforementioned Regulations have been violated by the forbearance to enforce the notes.

■ There remains for consideration plaintiff's pendent claim under state law. Traditional state remedies for the injuries alleged—waste and spoilation of corporate assets—are available to plaintiff suing derivatively, and are adequate. As a matter of discretion, in the absence of diversity,

and because there is now no valid federal claim to which it may be pendent at this early stage in the litigation, the state claims are dismissed without prejudice to pursue them in state court.

The motions are granted, and the action dismissed as to all defendants. No costs.

So Ordered.