**Mollie NUSSBACHER, Plaintiff,**

v.

**The CHASE MANHATTAN BANK (N.A.), Trustee, et al., Defendants.**

**No. 71 Civ. 1153.**

United States District Court,
S. D. New York.

Dec. 13, 1977.

On Motion to Reargue Feb. 3, 1978.

Silverman & Harnes, New York City, for plaintiff; Sidney B. Silverman, Joan T. Harnes, Martin H. Olesh, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants; Edward J. Reilly, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

On March 12, 1971, plaintiff Mollie Nussbacher, a stockholder of the Leasco Data Processing Equipment Corporation ("Leasco") commenced this action against Chase Manhattan Bank and other institutional defendants, as well as the directors of Leasco, seeking damages for alleged violations of Regulations G, T and U, 12 C.F.R. §§ 207, 220, 221, promulgated by the Board of Governors of the Federal Reserve System pursuant to Section 7 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78g, ("The Exchange Act"). These alleged violations arise out of the acquisition by Leasco of the Reliance Insurance Co. ("Reliance"). Plaintiff contends that in order to accomplish the acquisition, Leasco executed an agreement with Reliance Class A shareholders to purchase for cash their Reliance stock. To finance this agreement Leasco arranged for Reliance shareholders to receive Leasco stock in exchange for their own and for certain of the institutional defendants to simultaneously purchase that Leasco stock from the former Reliance shareholders, holding it "as security for Leasco's guarantee to repay the money advanced by the lenders." *Nussbacher v. Continental Illinois Bank and Trust Co. of Chicago*, 518 F.2d 873 (7th Cir. 1975), *cert. denied*, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976), (*Nussbacher II*).

The above transaction, which plaintiff characterizes as disguised loans entered into "in an attempt to avoid the applicable credit rules and regulations," (Complaint at ¶ 14) has given rise to this litigation, both in

this district and in Illinois. *Nussbacher II, supra.* Defendant Chase Manhattan Bank ("Chase") now moves for summary judgment on the grounds that plaintiff lacks standing to maintain this action as a derivative suit, and to dismiss the complaint on the ground that no private cause of action for damages exists under Section 7 of the Exchange Act or Regulation U.

A review of the background of this action, leading up to the instant motion, is helpful to an understanding of the case and the positions of the parties. The complaint originally named twenty-nine defendants, including all members of the Leasco board of directors and Leasco itself. Only twelve of the named defendants were ever served with process; service was never made on any of the directors. In 1972, the complaint was dismissed as to the Continental Illinois National Bank and Trust Co. and the First National Bank of Chicago for improper venue. Suit was thereafter brought against Continental only, in Illinois district court, *Nussbacher v. Continental Illinois Bank and Trust Co. of Chicago,* 61 F.R.D. 399 (N.D.Ill. 1973) (*Nussbacher I*) and ultimately settled. All the defendants who had been served with process, and who were properly before the New York District Court, have also settled, with the exception of Chase and one other defendant.

Prior to the Illinois settlement, defendant Continental had moved to dismiss the complaint for failure to comply with Rule 23.1 of the Federal Rules of Civil Procedure which requires that demand be made upon the board of directors of a corporation before a derivative action may be brought on its behalf. Plaintiff had not made such a demand and this omission, Continental contended, was fatal to her complaint. District Judge Richard B. Austin dismissed the complaint, *Nussbacher I, supra,* however, his ruling was reversed by the Seventh Circuit, which held that since the evidence established the futility of any demand, (the board's opposition to the suit was patent), the requirements of Rule 23.1 could be excused. In focusing on this narrow issue, the Court noted that still to be resolved was the "merits question presented by the matter of

business judgment," a question which might "be susceptible to resolution by summary judgment or (might) require a trial." *Nussbacher II* at 878. On remand the district court directed that a separate trial be held on the question of plaintiff's standing to maintain the action. *Nussbacher v. Continental Illinois National Bank and Trust Co. of Chicago,* 73 Civ. 512 (April 22, 1976). Before a trial could be held, however, the settlement with Continental was arranged.

In the midst of all this activity in the midwest, the New York action did not lie dormant. On March 10, 1972, plaintiff moved for partial summary judgment on the issue of liability and for dismissal of the cross-claims asserted against Leasco by several of the defendants. Certain of the defendants, including defendant Chase, moved for summary judgment or, alternatively, for dismissal for failure to comply with Rule 23.1. Judge Pollack denied all the motions, holding that a trial was necessary to determine whether the questioned transaction was "an extension of credit[,] . . . involved security for the extension of credit . . . [or] was neither." *Nussbacher v. Chase Manhattan Bank (N.A.) Trustee, et al.,* 71 Civ. 1153 (Sept. 22, 1972). He went on to note:

> It may well be that when the full record is before the Court, no violation of fundamental federal law will appear to be involved and that at best a question of the reasonable business judgment of the corporate officials of Leasco is sought to be second-guessed by the plaintiff. If this be true the case must fail for want of demand prior to suit and plaintiff's obligation to allege and show that refusal to sue by the directors derived from bad faith and wrongdoing and constitutes a breach of fiduciary duty on their part. The question of plaintiff's standing to sue derivatively may properly be raised by the defendants herein and is not a question which only Leasco may raise. Whether to sue is like other business questions, ordinarily a matter of internal management. The facts, when resolved here will determine whether the ordinary rule should apply.

*Id. citations omitted.* Judge Pollack then directed that discovery be completed within ninety days from the date of his order. I assumed control over the case upon taking the bench in November 1972. Following the decision of the district court in *Nussbacher I*, Chase renewed its motion to dismiss under Rule 23.1. I denied that motion after the Seventh Circuit's reversal in *Nussbacher II* "without prejudice to its being renewed at a later date."

## I.

With that as background, I turn first to Chase's motion for summary judgment. The question of demand under Rule 23.1 is not now before me, since for purposes of this motion Chase assumes that the failure to make such demand is excused by the obvious futility of so doing. Rather, Chase asks me to determine the limited question whether under the business judgment rule, the board's refusal to sue deprives plaintiff of standing to maintain this action.

The business judgment rule, which has been adopted by many circuits and appears to be acquiring growing acceptance in this Circuit, provides that absent allegations of fraud, collusion, bad faith or breach of fiduciary duty on the part of the board of directors, their refusal to sue should not be questioned by the court and, accordingly, a derivative suit by stockholders is not maintainable. *See United Copper Securities Co. v. Amalgamated Copper Co.,* 244 U.S. 261, 263–64, 37 S.Ct. 509, 61 L.Ed. 1119 (1917); *Hawes v. City of Oakland,* 104 U.S. 450, 26 L.Ed. 827 (1881); *Cosentino v. Carver-Greenfield,* 433 F.2d 1274, 1277 (8th Cir. 1970); *Ash v. International Business Machines, Inc.,* 353 F.2d 491, 492–93 (3d Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); *Swanson v. Traer,* 249 F.2d 854, 858–59 (7th Cir. 1957); *Gall v. Exxon Corp.,* 418 F.Supp. 508 (S.D. N.Y.1976); *Lasker v. Burks,* 404 F.Supp. 1172, 1174 (S.D.N.Y.1975); *Bernstein v. Mediobanca di Credito Finanziario-Societa per Azioni,* 69 F.R.D. 592 (S.D.N.Y.1974); *Klotz v. Consolidated Edison Co. of New York,* 386 F.Supp. 577 (S.D.N.Y.1974); *Kemper v.*

*American Broadcasting Co., Inc.,* 365 F.Supp. 1272 (S.D.Ohio 1973); *Miller v. American Telephone & Telegraph Co.,* 364 F.Supp. 648 (E.D.Pa.1973); *Issner v. Aldrich,* 254 F.Supp. 696 (D.Del.1966). This rule is apparently in addition to the demand requirement of Rule 23.1. *See generally Lasker v. Burks, supra; see also* Note, *The Demand Requirement and Standing Requirements in Stockholder Derivative Actions,* 44 U.Chicago L.R. 168 (1976).

Defendant argues, relying principally on *Bernstein, Lasker* and *Gall,* that plaintiff's failure to adduce any evidence of bad faith after the completion of extensive discovery establishes the business judgment defense and warrants summary judgment in its favor. Plaintiff opposes the motion on two grounds: She first argues that since the board of directors chose to maintain a neutral position with regard to this action, as evidenced by its letter to stockholders dated May 10, 1971, plaintiff has the right to proceed. Her own pleadings in the prior proceeding, however, belie this statement. In her complaint filed in Illinois against Continental, she stated:

(iii) Leasco's Board of Directors met on April 18, 1972 and discussed the New York action brought by plaintiff. At that meeting, the Board decided that it would be "contrary to business ethics" and the corporation's interest for Leasco to have initiated such action.

Such a statement is hardly consistent with plaintiff's present assertion that "the board has carefully and meticulously maintained a position of neutrality." (Plaintiff's memorandum at 5). Moreover, in an affidavit dated April 24, 1973, Saul Steinberg, chairman of the board of directors of Leasco (Defendant's Exhibit F) attested to the board's conclusion that the derivative action was inconsistent with the best interests of the corporation and, in fact, damaging to its business interests. He refers to a resolution of the board that the *Nussbacher* litigation was contrary to business ethics and would have been damaging to the corporation's "credit and standing in the financial community" had the corporation initiated

it. From the foregoing, the conclusion is inescapable that the board did not maintain a position of strict neutrality and that plaintiff's contentions in this regard are untenable.

■ The fact that the board opposed the action does not, of course, establish their good faith in so doing. Thus, plaintiff stands on firmer ground in asserting that the business judgment rule should not apply where the directors themselves are charged with complicity in the allegedly wrongful action, as they are in the case at bar. It is inconceivable that directors who participated in and allegedly approved of the transaction under attack can be said to have exercised unbiased business judgment in declining suit based on that very transaction. In this regard it is well to note the concurrence of Judge Coffin in *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 269 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973):

> I find it hard to imagine that a director, however, unaffiliated, who had participated, or under these circumstances knowingly acquiesced, in a major transaction, albeit for a corporate purpose, would authorize a suit, effectively against himself, claiming that the transaction violated the federal antitrust laws. Even independent watchdogs cannot be thought ready to sign a confession of that magnitude.

*Cf. Papilsky v. Berndt*, D.C., 59 F.R.D. 95 (1973), *appeal dismissed*, 503 F.2d 554 (2d Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 624, 42 L.Ed.2d 643 (1974). Although these cases involved the demand requirement of Rule 23.1, the reasoning is sufficiently analogous to be helpful here. Moreover, an examination of the cases on which defendant relies reveals either the complete absence of allegations of wrongdoing by the board of directors, *Bernstein, supra*, at 596; or a decision not to sue made by a body independent of those charged with wrongdoing. *Gall, supra; Lasker, supra.*

■ Defendant argues that discovery is complete and that plaintiff has utterly failed to adduce any evidence of bad faith on the part of the Board. Yet "the propriety of a business decision necessarily involves questions of motive and intent which are not generally amenable to summary disposition." *Bernstein v. Mediobanca, supra*, at 598. In that case the parties were directed to conduct discovery relating to the business judgment defense. Here nothing suggests that discovery had such a focus. Moreover, since credibility is involved, I would prefer to defer any judgment regarding good faith until a trial, where I would have the opportunity to observe the demeanor of the witnesses.

■ Chase also contends that plaintiff is estopped from challenging the good faith business judgment of the directors since they were never served with process and the running of the applicable statute of limitations has precluded litigation of their alleged liability. Chase then speculates that had the directors been properly served and made parties to this action, they could have moved for a summary adjudication as to the claims against them and after an adjudication in their favor established the business judgment defense, defendants Chase would have been entitled to summary judgment. This is all pure surmise—it is not for me to second guess what might have occurred under another set of circumstances. Nor do I believe that plaintiff is now estopped from raising the question of the directors' good business judgment as a bar to this summary judgment motion, when Chase seeks to establish that good faith as the very basis for that motion.

■ Chase finally argues that the stipulation of settlement with the remaining New York defendants submitted to the Leasco board of directors for approval affirms their capacity and demonstrates their good faith, since the only requisite of Rule 23.1 is that the Court approve any compromise. This argument is without merit. The presence or absence of the board's good business judgment in declining to prosecute this action has little relation to their later approval of the settlement agreement. It is necessary to remember that whatever the corporation's position, this is a derivative

suit brought for corporate benefit. While the Rules may not demand corporate approval of any settlement, submission of a settlement to the board for such approval was certainly not unwise, and should not be turned against the plaintiff who sought it.

## II.

Chase has also moved to dismiss plaintiff's complaint on the ground that there is no private right of action for damages under Section 7 of the Exchange Act or Regulation U, the Regulation applicable to Chase.[1] In so arguing, Chase asks me to reconsider the Second Circuit's holding in *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970) ("*Pearlstein I*") which permitted a private action for damages arising out of a violation of Section 7, in light of the Supreme Court's recent decisions in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); and *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Also militating in favor of a reconsideration of *Pearlstein I* is the enactment of Section 7(f) of the Exchange Act, 15 U.S.C. § 78g(f) and the promulgation of Regulation X, 12 C.F.R. § 224 (1975) which amendments make it unlawful for customers, as well as lenders, to violate margin requirements. These enactments caused the Second Circuit itself to question the validity of its rationale in *Pearlstein I*. *Pearlstein v. Scudder & Green*, 527 F.2d 1141, 1145, n.3 (2d Cir. 1975).

In opposing defendants' motion, plaintiff relies principally on the continued validity of *Pearlstein I* and the body of cases that have followed it.[2] *See, e. g., Freeman v. Marine Midland Bank*, 494 F.2d 1334 (2d

Cir. 1974); *Palmer v. Thompson & McKinnon, Auchincloss, Inc.*, 427 F.Supp. 915 (D.Conn.1977); *Evans v. Kerbs & Co.*, 411 F.Supp. 616 (S.D.N.Y.1976); *Newman v. Pershing*, 412 F.Supp. 463, 465 (S.D.N.Y. 1975).

*Pearlstein I* involved an action by a brokerage firm customer against the broker for violations of the margin and antifraud provisions of the federal securities laws. Only the charge of margin violations is relevant here. After examining the legislative history of Section 7, the Second Circuit concluded that although protection of individual investors was only an incidental purpose of that section (the main purpose was to protect the overall economy from excessive speculation), private actions were "a highly effective means of protecting the economy as a whole from margin violations by brokers and dealers." *Id.* at 1140. The Court's reasoning was apparently reinforced by the fact that under securities laws as then written, only the broker and not the customer was liable for violations of Section 7.

Judge Friendly registered a strong dissent on the grounds that private actions would in no measurable way further the purpose of Section 7, which was

". . . to give a government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market and out of more desirable uses of commerce and industry."

*Id.* at 1147 (Friendly, J., dissenting) *quoting* H.R.Rep.No.1383, 73d Cong., 2d Sess. 8 (1934). *See* note, *Federal Margin Requirements as a Basis for Civil Liability*, 66 Colum.L.Rev. 1462, 1467–71 (1966) for an in-

---

1. Section 7 of the Exchange Act, 15 U.S.C. § 78g, gives the Federal Reserve Board authority to fix margin requirements and makes it unlawful for any broker, dealer or banker to extend credit in violation of those requirements. 15 U.S.C. §§ 78g(a), 78g(c), 78g(d).

Regulations T and U govern extensions of credit by brokers/dealers and loans by banks, respectively, prescribing minimum margin requirements in accordance with § 7.

2. Plaintiff also argues that § 7(f) and Regulation X may not be applied retroactively. *Freeman v. Marine Midland Bank–N. Y.*, 494 F.2d 1334, 1337–38 (2d Cir. 1974). My reference to these enactments will be confined to a consideration of the legislative history and the light it might shed upon the continued viability of the *Pearlstein I* rationale.

depth discussion of the legislative history surrounding Section 7.

In 1970, Congress amended Section 7 to make it unlawful for customers to obtain credit in violation of applicable margin rules, 15 U.S.C. § 78g(f). Thus, the burden of margin violations was to be shared by customer and broker (or, as in the instant case, bank) alike.

Section 7(f) was enacted primarily to promote economic stability in the securities market and to protect against margin abuses by the private investor. *See* 116 Cong. Rec. 16954 (1970). *See also*, note, *Civil Liability for Margin Violations*, 43 Fordham L.Rev. 93, 105 (1974). Like Section 7, then, the amendment was directed at bolstering the national economy, and not at protecting any private party. Moreover, to the extent that Section 7 had become a cornerstone of investor protection, the amendment represented a retreat from that position, and in fact raises the question "whether the original § 7 was ever intended to mean what the *Pearlstein* court interpreted it to mean." *Bell v. J. D. Winer & Co., Inc.*, 392 F.Supp. 646, 653 (S.D.N.Y.1975).

With this brief summary of the legislative history as background, I turn to a consideration of the recent Supreme Court decisions which have established criteria for finding an implied private cause of action under federal statutes. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court set out four factors relevant to determining whether "a private remedy is implicit in a statute." *Id.* at 78, 95 S.Ct. at 2088.

"First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e. g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e. g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler*, 373 U.S. 647, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); cf. *J. I. Case Co. v. Borak*, 377 U.S. 426, 434, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394–395, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *id.* at 400, 91 S.Ct., at 2006 (Harlan, J., concurring in judgment)."

*Id.* The Court apparently viewed the first factor as the primary consideration, since after determining that protection of "corporate stockholders was at best a subsidiary purpose" of the statute under consideration, *id.* at 80, 95 S.Ct. at 2089, the Court went on to note that the other relevant factors were either "not helpful or militated against implying a private right of action." *Id.* See, also, notes *Emerging Standards for Implying Federal Actions*, 9 U.Mich.J.L.Ref. 294, 316 (1976).

More recently in *Piper v. Chris-Craft Industries, Inc., supra*, the Court applied the standards of *Cort v. Ash* to bar a private cause of action by an unsuccessful tender offeror under Section 14(e). It concluded that "examination of the statute [under consideration] and its genesis shows that *Chris-Craft* is not an intended beneficiary of the Williams Act, and surely is not one 'for whose *especial* benefit the statute was enacted.'" *Id.*, 430 U.S. at 37, 97 S.Ct. at 947, quoting *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. 2080. Commenting on the *Chris-Craft* opinion in *Santa Fe Industries v. Green, supra*, the Court "recognized that a private cause of action under the antifraud provi-

sions of the Securities Exchange Act should not be implied where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting the Act." *Id.,* 430 U.S. at 477, 97 S.Ct. at 1303. In *Santa Fe* the Supreme Court found no violation of Section 10b–5 of the Securities Exchange Act where a short-form merger transaction involved no manipulative or deceptive conduct. The fairness of the questioned transaction was "at most a tangential concern of the statute" and accordingly, following the reasoning of *Cort v. Ash,* the Court was "reluctant to recognize a cause of action . . . to serve what is 'at best a subsidiary purpose' of the federal legislation." *Santa Fe,* 430 U.S. at 478, 97 S.Ct. at 1303, quoting *Cort v. Ash,* 422 U.S. at 80, 95 S.Ct. 2080.

The Second Circuit has acknowledged in *Pearlstein I* that protection of the investor was but an "incidental" purpose of Section 7, *Pearlstein I, supra* at 1140, and thus it may be that under the emerging standards for finding implied causes of action under federal statutes, the rationale of *Pearlstein* has lost some of its force. Moreover, the 1970 amendments to Section 7 and the promulgation of Regulation X may have added to the erosion of the *Pearlstein* doctrine. It is at least apparent that a questioning process has begun. *See, e. g. Bell v. J. D. Winer & Co., supra,* at 653; *Freeman v. Marine Midland Bank–New York,* 419 F.Supp. 440, 451–452 (E.D.N.Y.1976); *Drasner v. Thompson,* 433 F.Supp. 485, 498–501 (S.D.N.Y. 1977); *See also, Utah State University v. Bear, Stearns & Co.,* 549 F.2d 164 (10th Cir. 1977), finding that no private cause of action exists for violations of Regulation 7. While I take this opportunity to add my voice to those who have questioned the continuing vitality of the *Pearlstein I* rationale, I am constrained to follow judicial precedent in this Circuit and leave any reconsideration of *Pearlstein I* to the wisdom of the Court of Appeals. Thus, I must deny Chase's motion to dismiss.

Accordingly, Chase's motions for summary judgment and to dismiss the Complaint are denied.

Settle order on three days' notice.

## ON MOTION TO REARGUE

Defendant Chase Manhattan Bank has moved for an order either (1) granting reargument of so much of Chase's Motion of April 15, 1977 as sought to dismiss the complaint on the ground that there is no private right of action under Section 7 of the Securities Exchange Act of 1934 or Regulation U; or (2) modifying and re-entering my order of December 13, 1977, so as to certify, pursuant to 28 U.S.C. § 1292(b), for review by the United States Court of Appeals for the Second Circuit, the question whether plaintiff may maintain derivatively on behalf of defendant Reliance Group, Inc. a private right of action for damages under Section 7 of the Securities Exchange Act of 1934 or Regulation U.

■ After careful review of Chase's papers, as well as those of the derivative plaintiff, Mollie Nussbacher, I am inclined to follow the reasoning expressed in my earlier opinion, *Nussbacher v. Chase Manhattan Bank, N.A.,* 444 F.Supp. 975 [current] (S.D.N.Y.1977), to its logical conclusion and hold that no private cause of action exists under Section 7 where a stockholder sues derivatively for violations of margin requirements.

My reasons for reaching this conclusion are set forth in my prior decision; under the standards developed in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1974), for determining whether or not a private cause of action may be implied in a statute, it is patent that a private person is simply not one for whose especial benefit Section 7 was enacted. Nor is there any indication of legislative intent to protect individual investors. To the contrary, investor protection is at best an incidental purpose of Section 7. *See Pearlstein v. Scudder & German,* 429 F.2d 1136, 1140 (2d Cir. 1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971). Additionally, since the legislative purpose behind Section 7 is to regulate national economy, *Nussbacher, supra,* 444 F.Supp. at 978, it would seem that piecemeal stockholder suits

levelled against the banking community would do more to disrupt than to further that goal.

Since the filing of *Nussbacher, supra,* it has come to my attention that my doubts regarding the continued vitality of *Pearlstein, supra,* which sanctioned a private cause of action under Section 7, are shared by two of my brethren in this Circuit, Chief Judge Mishler of the Eastern District of New York and Judge Murphy sitting in the District of Connecticut. *See Schy v. Federal Deposit Insurance Co.,* [current] Fed.L.Sec.Rep. (CCH) ¶ 96,242 (E.D.N.Y. Oct. 27, 1977) *appeal pending; Theoharous v. Bache & Co.,* Civ. No. B–204 (D.Conn. Sept. 2, 1977). Both held that no private cause of action exists under Section 7 for violations of margin requirements.

In light of these decisions and those which have expressed dissatisfaction with *Pearlstein,* see cases cited in *Nussbacher, supra,* 444 F.Supp. at 978, I believe the time has come to part ways with the *Pearlstein* doctrine. My decision to dismiss, however, is not predicated on this view alone. Even if *Pearlstein* continues to be viable, it is unlikely that it was ever intended to extend to the situation where a stockholder seeks to recover derivatively on behalf of a sophisticated corporation such as is represented here. Protection of the individual investor which *Pearlstein* sanctioned and protection of a corporate conglomerate which would result were this action allowed to proceed, are sufficiently disparate goals to make *Pearlstein* distinguishable from the case at bar. *Compare Gluck v. Frankel,* 440 F.Supp. 1143 (S.D.N.Y.1977).

Based upon the foregoing, Chase's motion to dismiss is granted.

IT IS SO ORDERED.