Benjamin **BERNSTEIN**, Plaintiff,

v.

**MEDIOBANCA BANCA di CREDITO FINANZIARIO–SOCIETA PER AZIONI et al., Defendants.**

**No. 73 Civ. 3549 (WCC).**

United States District Court,
S. D. New York.

Dec. 23, 1974.

Lawson F. Bernstein and Harold B. Obstfeld, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Mediobanca, Dreyfus and Lazard.

Wormser, Kiely, Allessandroni & McCann, New York City, for defendant Internatl. Telephone & Telegraph Corp.; Lawrence W. McKenna, New York City, Covington & Burling, Washington, D. C., John H. Schafer, III, Washington, D. C., of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This is an action by a shareholder of defendant International Telephone and Telegraph Corporation ("ITT"), brought derivatively on behalf of ITT. The Court's jurisdiction and the claims asserted are based on the Securities Exchange Act of 1934 ("Exchange Act"), particularly Sections 10(b) and 27, 15 U.S.C. §§ 78j(b) and 78aa, and on Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder. Plaintiff has continuously been a shareholder of ITT since a time prior to the wrongful acts alleged in the complaint and commenced this action after a demand was made upon the Board of Directors of ITT to do so and the demand was refused.

Plaintiff's claim relates to an agreement whereby ITT sold approximately 1.7 million shares of stock of Hartford Life Insurance Company ("Hartford") which it had acquired for cash during the period from late 1968 to early 1969. The sale had been necessitated by ITT's desire to merge with Hartford. In order to make this a non-taxable event as to the Hartford shareholders, ITT was required, under the terms of an Internal Revenue Service ruling, to dispose of the stock.

To effect the sale, ITT relied upon its investment banker, defendant Lazard Freres & Co. ("Lazard-NY"). Lazard-NY in turn arranged for defendant Mediobanca Banca di Credito Finanziario-Societa Per Azioni ("Mediobanca"), to enter into a written contract (the "Mediobanca Agreement") with ITT to effect such disposition.[1] Mediobanca was acting on behalf of a syndicate whose membership is an issue in this case.

The Mediobanca Agreement, dated November 3, 1969, provided that the price ITT would receive would be computed, at Mediobanca's option, by one of three alternative methods. Under the option chosen, the price ITT was to receive would be determined by the proceeds Mediobanca realized in the subsequent resale of the shares through arms-length transactions, with Mediobanca receiving a fixed commission on the resale of each share.

This suit involves two of Mediobanca's resales totalling 500,000 shares. In substance, it is plaintiff's contention that these two sales were "sweetheart deals" which violated the Mediobanca Agreement in two respects. First, it is claimed that the two agreements were not purchase and sale agreements, but instead granted the buyers, defendant Les Fils Dreyfus & Cie., S. A. ("Dreyfus"), and International Investment Associates, S. A. ("IIA"), options to purchase the shares at a fixed price, without imposing any obligation to buy and without any consideration for the grant of the options. These "options" to buy at a price of $55 per share (allegedly granted at a time when the stock had a

---

1. The proposed merger was eventually rejected by the Insurance Commissioner of Connecticut. Thereafter, however, the Insurance Commissioner did approve an exchange offer under which ITT acquired 95% of the stock of Hartford by exchanging one share of ITT Convertible Series N Preferred Stock for each outstanding share of Hartford. Pursuant to this offer, Mediobanca exchanged the Hartford stock for an equal number of ITT shares. It was the subsequent resale of the ITT shares which forms the basis of this action.

value on the New York Stock Exchange of $60–$62 a share) were exercised when the market price of the shares is claimed to have been $76 as to the 100,000 shares purchased by Dreyfus and $79 as to the 400,000 shares purchased by IIA. Second, the agreements were allegedly not made at arms-length because Dreyfus was a member of the syndicate, and IIA was, through defendant Lazard Freres et Cie. ("Lazard-Paris"), an affiliate of alleged syndicate member Lazard-NY, as well as of Mediobanca itself.

The Complaint alleges that the membership of Dreyfus and Lazard-NY in the syndicate and the supposed affiliation between IIA and the other syndicate members was fraudulently concealed from ITT in violation of Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. In particular, the Complaint charges that the following alleged facts were concealed from ITT:

(1) Jean Guyot, the President of IIA was a partner in Lazard-Paris and was or would soon become a member of the Board of Directors of Mediobanca, and Michel David-Weill, a member of the Board of Directors of IIA was a partner in Lazard-Paris, thereby tending to show IIA's affiliation with the syndicate members,

(2) Lazard-NY was a member of the syndicate, and

(3) Dreyfus was a member of the syndicate.

In response, defendants claim that:

(1) ITT was fully aware of Jean Guyot's partnership in Lazard-Paris; he has never been a member of the Board of Directors of Mediobanca. The other alleged affiliation between IIA and the syndicate could not possibly have been material to ITT's approval of the IIA resale,

(2) Lazard-NY was not a member of the syndicate, and

(3) ITT was fully aware of Dreyfus' participation in the syndicate.

Presently before the Court are two motions. The named defendants other than ITT have moved, pursuant to Rule 56, F.R.Civ.P., for summary judgment. This motion is based upon two alternative grounds:

(1) The decision by ITT's Board of Directors that this action should not be maintained is binding upon plaintiff and,

(2) There are no genuine issues as to any material facts alleged in the Complaint (e. g., ITT was *not* deceived as to any *material* fact relating to the Dreyfus and IIA sales and the contracts entered into for such sales were firm, mutually binding, arms-length agreements, not "sweetheart" options as plaintiff claims).

In response, plaintiff has moved, pursuant to Rule 56(f), F.R.Civ.P. for a denial or continuance of defendants' summary judgment motion until such time as plaintiff shall have had an opportunity, through discovery or other means, to obtain the facts needed to oppose that motion.

The issue presented by defendants' first ground for summary judgment is whether the decision to forego an action or to bring suit for damages is a matter of business judgment to be determined solely by the board of directors in the absence of so clear an abuse of discretion as to amount to waste. Surprisingly, no recent Second Circuit case has dealt directly with this issue. In a slightly different context, however, the Court of Appeals was confronted with a similar problem in *Alleghany Corp. v. Kirby*, 344 F.2d 571 (2d Cir. 1965), *cert. dismissed*, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966). In that case there was an application to intervene in an action originally commenced as a stockholders' derivative suit but in which the corporation had subsequently been substituted as plaintiff.

After having lost in both the District Court and the Court of Appeals, the

Board of Directors, upon advice of counsel, decided not to apply for certiorari. At this point, the application to intervene was filed. It was denied in the District Court and on appeal the Court of Appeals stated:

> "We fully agree with the District Court's conclusion that, on the record before it, the decision of the independent members of the Board of Directors not to apply for certiorari, after consultation with independent counsel and full presentation and consideration of relevant business and legal implications, did not result in 'inadequate representation as a matter of law.' *We know of no proposition of law that permits shareholders, absent any allegations of bad faith, collusion or negligence,* concededly neither present nor charged here, cf. *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961), *to intervene, as of right, in order to continue litigation that independent members of the Board of Directors, acting in good faith and in the exercise of sound business judgment, have decided to terminate."* 344 F.2d at 573 (emphasis added).

The force of this statement, however, is somewhat reduced by the fact that the potential interveners, sophisticated individuals who had followed the litigation closely, had waited until the eleventh hour to intervene and were held not to satisfy the timeliness requirement of Rule 24(a), F.R.Civ.P.

■ Notwithstanding the paucity of legal precedent in this Circuit, the rule is well settled elsewhere that unless the refusal of the directors to sue upon a stockholder's demand was fraudulent or collusive or indicative of something worse than unsound business judgment exercised honestly in the corporate interest, derivative suits may not be maintained by stockholders. *United Copper Securities Co. v. Amalgamated Copper*

*Co.,* 244 U.S. 261, 263–64, 37 S.Ct. 509, 61 L.Ed. 1119 (1917); *Hawes v. City of Oakland,* 104 U.S. 450, 26 L.Ed. 827 (1881); *Cosentino v. Carver-Greenfield Corp.,* 433 F.2d 1274, 1277 (8th Cir. 1970); *Ash v. International Business Machines, Inc.,* 353 F.2d 491, 492–93 (3d Cir. 1965), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); *Stadin v. Union Electric Co.,* 309 F.2d 912, 921 (8th Cir. 1962); *Swanson v. Traer,* 249 F.2d 854, 858–59 (7th Cir. 1957); *Kemper v. American Broadcasting Cos.,* 365 F.Supp. 1272, 1274 (S.D.Ohio 1973); *Issner v. Aldrich,* 254 F.Supp. 696, 699 (D.Del.1966); cf. *Meyer v. Fleming,* 327 U.S. 161, 167, 66 S.Ct. 382, 90 L.Ed. 595 (1946). Otherwise, a litigious stockholder, no matter how small his holdings, could easily intrude upon the authority of those who are vested with the responsibility of transacting the corporation's business. *Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139, 146 (3d Cir. 1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

> "A corporation's right not to sue is correlative to its right to sue. [A]n individual stockholder has no more right to challenge by a derivative suit a decision by the board of directors not to sue than to so challenge any other decision by the board." *Swanson v. Traer, supra* at 859.

In *United Copper Securities Co. v. Amalgamated Copper Co., supra,* the plaintiffs were the owners of a small percentage of the United Copper Company. They brought an action on its behalf after a demand upon the Board of Directors to do so was refused.

Justice Brandeis viewed the question presented as being,

> "[w]hether a stockholder in a corporation which is alleged to have a cause of action in damages against others . . . may sue at law to recover such damages in the right of

the corporation, if, after request, it refuses to institute the suit itself?"

He answered the question by stating:

"Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment . . . ." 244 U.S. at 263, 37 S.Ct. at 510.

The Complaint herein is devoid of any allegation that the alleged wrongdoers had control of the Board of Directors of ITT, or such relation to a majority or, indeed, any member of the Board as to permit the exercise of undue influence or that the Board's decision was contaminated by fraud or collusion or any misconduct whatever. The following statement in *United Copper* is therefore pertinent:

"[I]n the instant case there is no allegation that the United Copper Company is in the control of the alleged wrongdoers, or that its directors stand in any relations to them, or that they have been guilty of any misconduct whatsoever. . . . The fact that the cause of action is based on the Sherman Law [in the instant case the Securities Laws] does not limit the discretion of the directors or the power of the body of stockholders; nor does it give to individual shareholders the right to interfere with the internal management of the corporation."

In *Ash v. International Business Machines, Inc., supra,* the factual situation was very similar to the one at bar.

After a demand upon the Board of Directors was refused, the plaintiff, as a minority stockholder of the allegedly injured corporations, claimed he was entitled to sue derivatively. However, since nothing in the pleadings indicated that the refusal of the directors to sue was fraudulent or collusive, or represented anything worse than unsound business judgment honestly exercised in the corporate interest, they were held to be fatally deficient. The *Ash* Court, applying the sound business judgment rule and dismissing the action stated:

"The Supreme Court and, following it, the Court of Appeals have repeatedly stated and applied the doctrine that a stockholder's derivative action . . . can be maintained only if the stockholder shall allege and prove that the directors of the corporation are personally involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way." 353 F.2d at 493.

To rule otherwise would improperly involve the Court in the business decisions of every corporation and force the Court to choose between the business judgment of a stockholder and that of the board of directors.

The complaint in a derivative suit must be dismissed unless it can be shown that there was some action or threatened action of the directors beyond the authority conferred by the charter or the law under which the company was organized; or a fraudulent action which may result in serious injury to the company; or actions by the directors in their own interests and in a manner destructive of the company. *Hawes v. City of Oakland, supra.* Here, there is a conspicuous absence of any such allegation; instead, the complaint merely alleges that the Board of Directors has refused to

comply with plaintiff's demand to commence this action.

Plaintiff suggests that the board of directors of a corporation is obligated to pursue any and all causes of action which accrue in favor of the corporation and its failure to do so provides the basis for a derivative suit. We reject any such notion. The decision to forego a legally enforceable right may involve more than a consideration of the legal principles involved. Such decisions, like all management decisions, require a delicate balancing of complex business interests and relations. See Justice Brandeis' oft-quoted concurring opinion in *Ashwander v. T.V.A.*, 297 U.S. 288, 343–44, 56 S.Ct. 466, 80 L.Ed. 688 (1936). See also *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455, 463, 23 S.Ct. 157, 47 L.Ed. 256 (1903); *Hawes v. City of Oakland, supra*, 104 U.S. at 462.

■■ Plaintiff further argues that bad faith in refusal to bring suit should not be the only limitation upon the discretion of the directors. Indeed, a few decisions suggest that factors other and less compelling than bad faith or bias may suffice to disqualify directors from representing the corporate interest and thus make it permissible for a minority stockholder to sue on behalf of the corporation. See *Hill v. Wallace*, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1922); *Ash v. International Business Machines, Inc., supra* at 493. However, even if there may be disqualifying circumstances other than bad faith or bias, no suggestion of any such circumstances appears in the Complaint. Plaintiff has, at this time, utterly failed to allege in specific terms either fraud, breach of trust, illegality or an *ultra vires* act on the part of ITT's Board of Directors. However, we feel that it would be inappropriate to grant summary judgment at this time. Plaintiff, a small stockholder of ITT, has not yet had an opportunity to engage in pre-trial discovery to any significant extent. And, although plaintiff cannot at this time present, by affidavit, facts essential to justify his opposition to defendants' summary judgment motion, a typical situation for the application of Rule 56(f) is where, as here, such facts are exclusively with or largely under the control of the moving party. 6 Moore, Federal Practice ¶ 56.24, p. 2875 (2d ed. 1974). It is only in the rarest of circumstances that summary judgment will be granted against a plaintiff in a stockholder's derivative action when there has not been an opportunity to resort to discovery procedures. *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2d Cir. 1958), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

In *Fogelson v. American Woolen Co., Inc.*, 170 F.2d 660 (2d Cir. 1948), the plaintiffs brought a shareholder's derivative action challenging the propriety of the corporation's pension plan. Defendants moved for summary judgment and the district court granted it on the ground that "no colorable reason to disturb the exercise by the directors of their judgment and discretion in the discharge of their duties" was presented. In its opinion, the court relied upon the uncontradicted affidavits of the directors that they had exercised their best business judgment; these directors included a former Governor of Massachusetts, a former governor of the Federal Reserve Board and a former Assistant Secretary of the Treasury. Nevertheless, the Court of Appeals for the Second Circuit reversed, stating that, although courts are reluctant to interfere with the business judgment of corporate directors and will do so only if there has been so clear an abuse of discretion as to amount to legal waste, the affidavits of the directors attesting to their exercise of proper business judgment was insufficient to support a motion for summary judgment on the business judgment defense.

Also meriting particular mention is *Subin v. Goldsmith*, 224 F.2d 753, 760 (2d Cir. 1955), which ruled that where,

as here, the facts asserted by movant are peculiarly within the knowledge of the movant, the opponent must be given the opportunity to disprove these facts by cross-examination. See *Parsons v. Amerada Hess Corp.*, 422 F.2d 610 (10th Cir. 1970).

The Court concludes that although plaintiff has yet made no showing sufficient to overcome the defense of business judgment, much, if not all, the possible evidence demonstrating bad faith is in the possession of defendants and that plaintiff should be given a reasonable opportunity to discover it. Summary judgment would be particularly inappropriate since the propriety of a business decision necessarily involves questions of motive and intent which are not generally amenable to summary disposition. See *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

The second branch of defendants' motion, which asserts that no issue exists as to any material fact, cannot be sustained, defendants themselves having conceded that plaintiff should be allowed discovery as to the merits of the claim. The only issue now appears to be how extensive that discovery should be.

The moving defendants argue that, as a matter of judicial economy, discovery relating to the business judgment defense should precede discovery on the merits of the claim itself. This would seem to be the logical course in that this defense is a threshold issue which may be dispositive. It therefore should be resolved before the substantive merits of the claim are adjudicated.

The Court's present denial of defendants' motion for summary judgment is, of course, without prejudice to their renewal of that motion after plaintiff has had a reasonable opportunity for discovery.

So ordered.