Arthur N. ABBEY, on behalf of himself
and on behalf of all shareholders of
Control Data Corporation, derivatively,
Plaintiff,

v.

CONTROL DATA CORPORATION et
al., Defendants.

Civ. No. 4–78–187.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 7, 1978.

Floyd E. Boline, Chestnut, Brooks & Burkard, Minneapolis, Minn., and Gene Mesh, Gene Mesh Co. L. P. A., Cincinnati, Ohio, for plaintiff.

Richard G. Lareau, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn., and Daniel M. Gribbon and Charles Lister, Covington & Burling, Washington, D. C., for defendant Control Data Corporation.

Gerald E. Magnuson, Lindquist & Vennum, Minneapolis, Minn., for individual defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This shareholders' derivative action stems from illegal payments admittedly made by the Control Data Corporation (CDC) to foreign governments during the period of 1967 to 1976. On April 26, 1978, CDC pled guilty to criminal charges brought by the United States as a result of the illegal payments, and $1,381,000.00 in criminal and civil penalties were levied against, and paid by, CDC. No individual directors or employees of CDC were charged in the criminal action. This action was commenced on May 4, 1978, and it seeks to compel seven directors and officers of CDC to repay the amounts of the penalties to CDC. Cancellation of certain executive stock option plans approved by CDC stockholders during the period of the illegal payments also is sought. Plaintiff's claims are based on alleged violations of Sections 13(a) and 14(a) of the Securities Exchange Act of 1934 and common law corporate fiduciary principles. A "Special Litigation Committee" of the CDC Board of Directors has determined that this action is not in the best interests of CDC; relying on this determination, CDC and the seven individual defendants now move for summary judgment. That motion is granted.

 The motion for summary judgment is based on the so-called "Business Judgment Rule." This rule stands for the basic proposition that most important corporate decisions are to be made by the corporation's board of directors, and a shareholder, through a court action, normally cannot disrupt those decisions. When applied to derivative actions, the business judgment rule operates to bar a shareholder action on behalf of the corporation when the board of directors determines that the action is not in the corporation's best interests. The rationale underlying the rule is obvious and sound: management of the corporation is vested in the board of directors, and shareholders who disagree with board decisions normally must seek change through the intracorporate structure, not through the courts. An exception to the rule applies, however, where the board's

decision to bar the derivative action is made in bad faith, or where the board stands "in a dual relation which prevents an unprejudiced exercise of judgment." *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 264, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917) (J. Brandeis). *Accord, e. g., Stadin v. Union Electric Co.*, 309 F.2d 912, 921 (8th Cir. 1962), *cert. denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963). Such a dual relation, of course, exists in a case, such as the present one, where the defendants being sued in the derivative action also are directors of the corporation. In that situation the directors, who as defendants are subject to personal liability, cannot be expected to determine impartially whether the derivative action against them is in the best interests of the corporation. Therefore, the business judgment rule normally does not bar a derivative action when the directors are defendants in the action.

CDC claims this exception to the business judgment rule does not apply to the present case. After plaintiff filed this suit, the board of directors of CDC appointed a "Special Litigation Committee" from among its members. The four directors on that committee are not defendants in this suit, and they were delegated full and unconditional authority to determine whether plaintiff's derivative action is in the best interests of CDC. With the assistance of counsel otherwise unaffiliated with CDC, the committee conducted an extensive investigation and determined that the suit was not in CDC's best interests. This decision was based on the following considerations: none of the defendant directors had personal knowledge that the foreign payments were illegal; none of the defendant directors personally profited from those payments; the payments were intended to serve CDC's business interests; the litigation would seriously disrupt the effectiveness of a highly successful senior management team, to CDC's detriment; full public disclosure of the details of the foreign payments might prejudice CDC's present and future business activities and possibly even endanger the lives of some CDC employees; the defendant

directors fully cooperated with the committee's investigation and with the investigations of the United States; and the United States, following its investigations, elected not to bring criminal or civil charges against the defendant directors. Based on these findings the committee directed CDC counsel to take the necessary steps to obtain dismissal of this case.

The issue on this motion therefore is whether the Special Litigation Committee's determination as to the best interests of CDC is sufficient under the business judgment rule to bar plaintiff's derivative action. Plaintiff does not contest the good faith of the committee's determination or the committee's independence from the defendant directors. Indeed, at oral argument counsel for plaintiff recognized that, given the impeccable credentials of the committee members and the thoroughness of their investigation, it would be impossible to establish bad faith or lack of independence on the part of the committee. Instead, plaintiff asserts, first, that the public policy underlying the Securities Exchange Act of 1934 requires that the business judgment rule not apply and, second, that the business judgment rule is inapplicable when defendant directors are accused of fraudulent or criminal conduct.

■ Plaintiff's first argument, that the public policy underlying the 1934 Act precludes application of the business judgment rule, must be rejected. Initially, the court notes that plaintiff's claims under Sections 13(a) and 14(a) of the 1934 Act are at best weak. Several cases of recent origin have dismissed similar illegal foreign payments cases for failure to state a claim under Sections 13(a) and 14(a). *See In re Tenneco Securities Litigation*, 449 F.Supp. 528 (S.D. Tex.1978); *Lewis v. Elam*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,013 (S.D.N.Y.1977); *Levy v. Johnson*, [1976–1977 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,899 (S.D.N.Y.1977); *Limmer v. General Tel. & Elec. Corp.*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,111 (S.D.N.Y.1977). These cases have made the valid point that foreign payments

cases such as the present one involve primarily questions of corporate waste and mismanagement, questions properly dealt with under state law, not federal securities law. *See also Sante Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (federal securities laws are not meant to federalize the law of corporations). Thus, it seems incongruous for plaintiff to argue based on the strong underlying public policy of the 1934 Act when that Act is only marginally applicable, if applicable at all, to this case.

A second consideration with respect to plaintiff's first argument is Eighth Circuit law. The Eighth Circuit has held the business judgment rule applicable to cases under the federal antitrust laws. *See Stadin v. Union Electric Co.*, 309 F.2d 912, 921–22 (8th Cir. 1962), *cert denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963); *Cosentino v. Carver-Greenfield Corp.*, 433 F.2d 1274, 1277 (8th Cir. 1970). Since the public policies underlying the civil liability provisions of the antitrust laws are at least as strong as those underlying the 1934 Act, this court must assume that the Eighth Circuit would apply the business judgment rule to 1934 Act cases as it does to antitrust suits.

■ Finally, plaintiff has cited no authority, and this court has found none, for the proposition that the business judgment rule is not applicable to 1934 Act derivative cases. The one case relied heavily upon by plaintiff, *Lasker v. Burks*, 567 F.2d 1208 (2d Cir.), *cert. granted*, —— U.S. ——, 99 S.Ct. 75, 58 L.Ed.2d 106 (1978), is inapposite. That case was a derivative action by a *mutual fund shareholder against the fund's* investment adviser and inside directors for mismanagement of the fund which resulted in significant losses to the fund. As in the present case, a special committee of nondefendant outside directors was appointed by the board of directors and that committee determined that the derivative action was not in the fund's best interest. The Second Circuit held that this determination did not bar the derivative action, irrespective of the good faith of the committee. *Lasker*, however, dealt with the Investment Company

and Investment Advisors Acts of 1940 and the court's holding was specifically limited to cases arising under those Acts. 567 F.2d at 1212 n. 14. Although it expressed some skepticism as to the ability of such a committee to make an unbiased and objective decision, the court was concerned primarily with the "unique nature of the investment company and its symbiotic relationship with its investment adviser." *Id.* The *Lasker* court found a strong congressional intent under the 1940 Acts to protect mutual fund investors and the public from abuses inherent in the mutual fund industry, an intent that would be frustrated if disinterested directors through the business judgment rule could bar derivative actions against the mutual fund's majority directors and investment adviser. The concern of the *Lasker* court cannot be carried over to the present case, since the public policy and congressional intent underlying the 1940 Acts cannot properly be compared with that underlying the 1934 Act. The 1940 Acts are detailed regulatory statutes; they differ fundamentally in purpose and design from the disclosure-oriented 1934 Act. *See generally* Motley, Jackson & Barnard, *Federal Regulation of Investment Companies Since 1940*, 63 Harv.L.Rev. 1134 (1950). Therefore, this court finds plaintiff's reliance on the *Lasker* case to be misplaced.

■ Plaintiff's second argument is that the alleged conduct of the defendant directors was criminal, or at least fraudulent, and cannot be ratified by CDC or the Special Litigation Committee. Plaintiff appears to be correct that a corporation is *powerless to ratify criminal acts of its* agents. However, a decision by a corporation not to sue an agent who has allegedly committed criminal acts against the corporation does not constitute ratification of those acts. The business judgment rule applies to any reasonable, good faith determination by an independent board that the derivative action is not in the best interests of the corporation. *See, e. g., Gall v. Exxon Corp.*, 418 F.Supp. 508 (S.D.N.Y.1976); *Bernstein v. Mediobanca Bancadi Credito*, 69 F.R.D. 592 (S.D.N.Y.1974). A board of

directors, as in the present case, may have sound reasons for believing the lawsuit is not in the corporation's best interests, even if the corporation has a valid cause of action and even if the alleged misconduct of the defendants was criminal or fraudulent. See *Gall v. Exxon, supra,* at 516–18. As Mr. Justice Brandeis once observed:

> Mere belief that corporate action, taken or contemplated, is illegal gives the [shareholder] no greater right to interfere than is possessed by any other citizen. Stockholders are not guardians of the public. The function of guarding the public against acts deemed illegal rests with public officials.

*Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 343, 56 S.Ct. 466, 481, 80 L.Ed. 688 (1936) (concurring). Plaintiff's second argument therefore must fail.

The court wishes to emphasize that the independence and good faith of the Special Litigation Committee are not at issue; plaintiff concedes that the Committee reached its decision in good faith and independent of any pressures and influence from the defendant directors. The concern expressed by the Second Circuit in *Lasker,* that such a committee would not "view with the necessary objectivity the actions of their colleagues in a situation where an adverse decision would be likely to result in considerable expense and liability for the individuals concerned," 567 F.2d at 1212, therefore is not present here.

Defendant's motion for summary judgment is GRANTED.