603 F.2d 724
 Fed. Sec. L. Rep. P 96,949
Arthur N. ABBEY, on behalf of himself and on behalf of all
shareholders of Control Data Corporation,
Derivatively, Appellant,
v.
CONTROL DATA CORPORATION, a nominal defendant herein, and
Norbert R. Berg, Thomas G. Kamp, William R. Keye, Robert M.
Price, Robert D. Schmidt, William C. Norris, Marvin G.
Rogers, and the present and former officers and employees of
Control Data Corporation, and its subsidiaries who were
granted stock options which have been or may be exercised by
them pursuant to the Executive Performance and Retention
Plan and Control Data Corporation's Employees' Non-Qualified
Stock Option Plan, hereinafter called the "Plans", Appellees.
 No. 79-1058.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1979.
Decided Aug. 6, 1979.
 
 Gene Mesh, Gene Mesh Co., Cincinnati, Ohio, for appellant; Floyd E. Boline, Chestnut, Brooks & Burkard, Minneapolis, Minn., and James W. Schlueter, Cincinnati, Ohio, on briefs.
 Daniel M. Gribbon, Covington & Burling, Washington, D. C., for appellee Control Data Corp.; Charles Lister, Margaret E. Clark, Washington, D. C., and Richard G. Lareau, Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn., on brief.
 Gerald E. Magnuson, of Lindquist & Vennum, Minneapolis, Minn., for appellee, individuals; Mark R. Johnson, Minneapolis, Minn., on brief.
 Before LAY, BRIGHT and HENLEY, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 Arthur N. Abbey appeals the judgment of the district court[1] dismissing his stockholders' derivative suit against Control Data Corporation (CDC). Abbey v. Control Data Corp., 460 F.Supp. 1242 (D.Minn.1978). We affirm.
 
 
 2
 Abbey brought this class action pursuant to Fed.R.Civ.P. 23.1 to compel seven senior officers and directors of CDC to repay $1,381,000 in civil and criminal penalties levied on CDC as a result of the corporation's guilty plea to criminal charges. Those charges stemmed from illegal payments admittedly made by the corporation to certain foreign entities.[2] Abbey also sought the cancellation of several executive stock options approved by CDC stockholders during the period in which the payments were made, as well as remuneration for attorneys' fees he incurred in litigating these claims on behalf of himself and all other CDC stockholders.
 
 
 3
 Abbey asserted that by secretly diverting corporate funds to make illegal foreign payments, CDC and the named defendants had violated the federal securities laws and various common law corporate fiduciary principles which create stockholder remedies for corporate waste and mismanagement. The securities law claims charged violations of §§ 13(a) and 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78m and 78n, which prohibit corporations from including false and misleading statements in proxy solicitations and in registration documents filed with the Securities and Exchange Commission. The alleged "false and misleading statements" obviously relate to CDC's failure to give its stockholders notice of the foreign payments in the proxy and registration materials released during the payment period.
 
 
 4
 CDC's board of directors responded to Abbey's suit by creating an autonomous "Special Litigation Committee" to investigate the charges. The committee was composed of seven of CDC's "outside" directors persons holding responsible positions in government and business. No committee member had been named as a defendant, and there is no indication that any member was involved in or had contemporaneous knowledge of the foreign payments. The committee elected to retain independent counsel and conducted a plenary investigation of Abbey's charges. The named defendants were interviewed, and Abbey was invited to present his grievances in detail. He declined this invitation.
 
 
 5
 The committee determined that legal action by CDC against the defendants was not in the best interest of the corporation because: (1) the defendants had not been directly involved in the payments, nor had they personally profited from them; (2) the defendants had fully cooperated with the Justice Department and the committee; (3) legal action against the defendants could significantly impair their ability to manage corporate affairs; (4) the foreign payments were a customary business practice at the time they were made and were intended to serve the business interests of CDC; and (5) disclosure of the details of the payments might endanger certain CDC employees and would nullify the Justice Department's agreement with CDC to treat the results of its criminal investigation as confidential, See n.2, Supra. At the close of its investigation, the committee directed its counsel to move for summary judgment on behalf of CDC. The motion was supported by affidavits detailing the above findings and conclusions. Abbey filed no opposing affidavits and rested on his pleadings. The district court entered summary judgment against him.
 
 
 6
 The district court based its decision on the "business judgment rule" which, in general, vests responsibility for decisionmaking in the corporation's board of directors and precludes stockholders from disrupting board decisions through derivative actions where the board has determined the actions are not in the corporation's best interests. As the district court noted, however, an exception applies where the board's decision to bar the derivative action is made in bad faith or where the directors, themselves, are subject to personal liability in the action and cannot be expected to determine impartially whether it is warranted. 460 F.Supp. at 1244, Citing United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917). The district court did not invoke that exception since CDC's independent litigation committee provided the "unprejudiced exercise of judgment" contemplated by the business judgment rule. 244 U.S. at 264, 37 S.Ct. 509.
 
 
 7
 For reversal, Abbey asserts that the business judgment rule is inapplicable where the defendant-directors in a derivative suit are charged with criminal misconduct or violations of the federal securities laws. The district court rejected this contention, relying in part on a series of decisions from the Southern District of New York which appear to hold that the rule applies to any reasonable, good faith determination by an autonomous board of directors that the action is not in the best interests of the corporation. 460 F.Supp. at 1245, Citing Gall v. Exxon Corp., 418 F.Supp. 508 (S.D.N.Y.1976); Bernstein v. Mediobanca Bancadi Credito, 69 F.R.D. 592 (S.D.N.Y.1974). See also Rosengarten v. Int'l Tel. & Tel. Corp., 466 F.Supp. 817 (S.D.N.Y.1979). As in the case at bar, the district courts in Rosengarten and Gall invoked the business judgment rule to terminate derivative actions brought under the federal securities laws to recover illegal foreign payments.
 
 
 8
 Both before the district court and in his appellate brief, Abbey relied heavily on Lasker v. Burks, 567 F.2d 1208 (2d Cir. 1978), in arguing that Rosengarten and Gall were wrongly decided. In Lasker the Second Circuit restricted the scope of the business judgment rule by holding that "disinterested directors of an investment company do not have the power to foreclose the continuation of nonfrivolous litigation brought by shareholders against majority directors for breach of their fiduciary duties." 567 F.2d at 1212. That decision was based upon the court's understanding of the congressional intent and public policies underlying the federal Investment Company and Investment Advisors Acts of 1940 and the "unique nature of the investment company and its symbiotic relationship with its investment advisors." 567 F.2d at 1212 N.14.[3]
 
 
 9
 Just prior to oral argument before this court in the present case, however, the Lasker decision was reversed on appeal by the Supreme Court. Burks v. Lasker, --- U.S. ----, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). The Court apparently did not go so far as to hold that corporations in all circumstances may exercise their good faith, independent business judgment to terminate derivative actions alleging violations of federal law.[4] But it did stress that "federal courts should apply state law governing the authority of independent directors to discontinue derivative suits to the extent such law is consistent with (the federal statutes involved.)" 99 S.Ct. at 1841. Thus, federal statutes such as the Investment Company Act or the Securities and Exchange Act "do not require that federal law displace state laws governing the powers of directors unless the state laws permit action prohibited by the Acts, or unless 'their application would be inconsistent with the federal policy underlying the cause of action.' " 99 S.Ct. at 1837, Citing Johnson v. Rwy. Express Agency, 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).
 
 
 10
 The Supreme Court's opinion in Lasker is particularly helpful here in that it sets forth a two-stage analysis which guides us in our present task.[5] We first determine whether state law permitted CDC's committee of outside directors to terminate Abbey's derivative action. And, if so, we then determine whether that termination impinged upon the federal policies underlying Abbey's securities law claims. 99 S.Ct. at 1838.
 
 
 11
 The parties agree that since CDC is a Delaware corporation, we should look to the laws of that state to determine whether the corporation's committee of outside directors had the authority to terminate Abbey's derivative action. See Beard v. Elster, 39 Del.Ch. 153, 160 A.2d 731, 735 (1960) (the internal affairs of Delaware corporations are controlled by the laws of that state). The procedure followed by CDC's board of directors in delegating its decision making authority to that committee was clearly an attempt to insulate the corporation from shareholder interference by meeting the requirements of the business judgment rule.[6] That long-standing rule is found in the common law of many states, and was early stated by Mr. Justice Brandeis in United Copper Securities Co. v. Amalgamated Copper Co., supra, 244 U.S. at 263-64, 37 S.Ct. at 510.
 
 
 12
 Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion Intra vires the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment . . . .
 
 
 13
 See also Polin v. Conductron Corp., 552 F.2d 797, 809 (8th Cir.), Cert. denied, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977); Stadin v. Union Electric Co., 309 F.2d 912 (8th Cir. 1962), Cert. denied, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963).
 
 
 14
 The courts of Delaware have often had occasion to apply the business judgment rule. For example, in Puma v. Marriott, 283 A.2d 693, 695 (Del.Ch.1971), the plaintiff-shareholder brought a derivative action challenging the decision of the corporation's board of outside directors to acquire all of the stock of six smaller companies owned in part by several of the corporation's inside directors. Noting that plaintiffs had not charged bad faith or fraud on the part of the outside directors in approving this acquisition, the Delaware court dismissed the action.
 
 
 15
 (S)ince the transaction complained of was accomplished as a result of the exercise of independent business judgment of the outside, independent directors whose sole interest was the furtherance of the corporate enterprise, the court is precluded from substituting its uninformed opinion for that of the experienced, independent board members . . . .
 
 
 16
 283 A.2d at 696. The Puma decision is consistent with the earlier pronouncement of the Delaware Supreme Court in Beard v. Elster, supra, 160 A.2d at 738, where it is stated:
 
 
 17
 We think the fact that a disinterested Board of Directors reached (its decision to grant certain stock options) by the exercise of its business judgment is entitled to the utmost consideration by the courts in passing upon the results of that decision. Such has long been the law of this State. Blish v. Thompson Automatic Arms, 30 Del.Ch. 538, 64 A.2d 581.[7]
 
 
 18
 Abbey has cited no Delaware cases holding that the applicability of the business judgment rule hinges on the nature of the plaintiff-shareholder's cause of action. And we find no merit to his argument that the rule is inapplicable where the defendant-directors are charged with criminal misconduct. As a matter of Delaware law, we agree with the district court that the rule apparently applies to any reasonable good faith determination by an independent board of directors that the derivative action is not in the best interests of the corporation. 460 F.Supp. at 1245. Contrary to Abbey's assertions, the committee's decision not to pursue his claims was not tantamount to a ratification by the committee of the underlying criminal acts alleged in his complaint.
 
 
 19
 The decision not to bring suit with regard to past conduct which may have been illegal is not itself a violation of law and does not result in the continuation of the alleged violation of law. Rather, it is a decision by the directors of the corporation that pursuit of a cause of action based on acts already consummated is not in the best interest of the corporation. Such a determination, like any other business decision, must be made by the corporate directors in the exercise of their sound business judgment. The conclusive effect of such a judgment cannot be affected by the allegedly illegal nature of the initial action which purportedly gives rise to the cause of action.
 
 
 20
 Gall v. Exxon, supra, 418 F.Supp. at 518.
 
 
 21
 Since we determine that Delaware law authorized CDC's outside directors to terminate Abbey's derivative action, we turn now to the question whether termination of the litigation impinged upon the public policies underlying Abbey's federal securities law claims. He alleges that CDC violated §§ 13(a) and 14(a) of the 1934 Act by failing to disclose contemporaneously to its shareholders the illegal foreign payments which it now admits having made. Section 13(a) requires the issuers of registered securities to file with the SEC such reports as are "necessary and appropriate for the proper protection of investors and to insure fair dealing in the security." 15 U.S.C. § 78m. Section 14(a) governs proxy solicitations by the issuers of registered securities. 15 U.S.C. § 78n. The SEC's rules and regulations enacted pursuant to that section prohibit the use of false and misleading statements in such solicitations. Securities Exchange Rule 14a(9)(a); 17 C.F.R. § 240.14a-9.
 
 
 22
 The Section 13(a) Claim.
 
 
 23
 While § 13(a) requires the issuers of registered securities to file certain reports with the SEC, it does not expressly confer rights on private parties nor proscribe any conduct as illegal. Thus, there is a serious question as to whether § 13(a) gives rise to an implied private cause of action. See Touche Ross & Co. v. Redington, --- U.S. ----, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).[8] For present purposes we may assume without deciding that in some circumstances such a cause of action exists.[9] Even so, the extent to which the § 13(a) reporting provisions provide a federal remedy for ultra vires corporate actions such as illegal foreign payments remains uncertain.
 
 
 24
 In general, the anti-fraud provisions of the federal securities laws were designed to protect investors engaged in the purchase and sale of securities by implementing a policy of full disclosure. SEC v. Capital Gains Bureau, 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). Not all instances of corporate fraud or mismanagement fall within the scope of that protection. Indeed, derivative causes of action under state law for breach of fiduciary duties traditionally have provided the principal remedy whereby stockholders can recover damages on behalf of the corporation for corporate waste and mismanagement. As we noted in Golub v. PPD Corp., 576 F.2d 759, 764 (8th Cir. 1978):
 
 
 25
 (I)t was not the purpose of the federal security laws to provide a federal cause of action for stockholders who have been damaged by mere corporate mismanagement or breach of fiduciary duty by those in charge of the affairs of the corporation. Controversies in those areas have traditionally been the subject of litigation in the state courts, and federal legislation in the field of securities regulation was not designed to draw such controversies into the federal courts in the absence of diversity of citizenship and the requisite amount in controversy.
 
 
 26
 See also Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 474-77, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); Cort v. Ash, 422 U.S. 66, 84, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir. 1977), Cert. denied, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).
 
 
 27
 We have carefully considered Abbey's § 13(a) claim and agree with the district court that it is at best weak. Illegal foreign payments cases clearly involve state law questions of breach of fiduciary duties. They should not be dealt with under the general disclosure provisions of the federal securities laws where it is apparent, as here, that the nondisclosure of such payments had little, if any, impact on the plaintiff's dealings in the corporation's stock. Several recent cases involving illegal foreign payments have adopted this rationale in dismissing the plaintiff's cause of action for failure to state a claim under § 13(a) or § 14(a). See In re Tenneco Securities Litigation, 449 F.Supp. 528 (S.D.Tex.1978); Lewis v. Elam (1977-78 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 96,013 (S.D.N.Y.1977); Limmer v. Gen. Tel. & Elect. Co. (1977-78 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 96,111 (S.D.N.Y.1977); Levy v. Johnson (1976-77 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 95,899 (S.D.N.Y.1977).
 
 
 28
 The weakness of Abbey's § 13(a) claim obviously undercuts his argument that the federal policies underlying that section preclude the decision of the district court to dismiss his complaint. In the words of the district court, "it seems incongruous for plaintiff to argue based on the strong underlying public policy of the 1934 Act when that Act is only marginally applicable, if applicable at all, to this case." 460 F.Supp. at 1245. Thus, we determine that Abbey's § 13(a) claim was properly dismissed.
 
 
 29
 The Section 14(a) Claim.
 
 
 30
 The purpose of § 14(a) is to "prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). And the Supreme Court has recognized an implied private cause of action under that section in favor of stockholders who have been injured as a result of false or misleading proxy solicitations. 377 U.S. at 430-31, 84 S.Ct. 1555. Abbey argues that § 14(a) has been violated here because CDC stockholders would not have voted to elect certain officers or to grant certain stock options had the fact of the illegal foreign payments been disclosed in the proxy solicitations relative to those decisions. But he has made no showing that the details of those payments were relevant and material facts which a reasonably prudent stockholder would have considered in voting on the questions presented for stockholder approval. Golub v. PPD Corp., supra, 576 F.2d at 764. See also Selk v. St. Paul Ammonia Products, Inc., 597 F.2d 635 (8th Cir. 1979). The corporation's uncontroverted affidavits outlining the results of its internal investigation indicate that none of the CDC officers or employees who benefitted from the challenged proxy solicitations were directly involved in the illegal payments. See n.2, supra.
 
 
 31
 Several courts have refused to find a federal remedy under § 14(a) for secret, illegal corporate payments. They have required "transactional causation" as an essential element of a § 14(a) cause of action: the harm to plaintiff-shareholders must have resulted from the corporate transactions which were authorized as a result of the false or misleading proxy solicitations. See In re Tenneco Securities Litigation, supra, 449 F.Supp. at 531; Lewis v. Elam, supra, Fed.Sec.L.Rep. (CCH) at P 96,013. Any injury to CDC shareholders from the corporation's illegal foreign payments stems directly from the corporate waste and mismanagement involved in authorizing those payments and not from allegedly misleading proxy solicitations dealing with unrelated corporate business matters. Consequently, we determine that Abbey's § 14(a) claim is also at best marginally related to the federal policies underlying that section. The district court did not err in dismissing his complaint under the business judgment rule.
 
 
 32
 Affirmed.
 
 
 
 [1]
 The United States District Court for the District of Minnesota, The Honorable Edward J. Devitt, Chief District Judge, presiding
 
 
 [2]
 CDC management initiated an internal investigation of the illegal payments in 1976. The corporation voluntarily disclosed its findings to CDC stockholders through proxy materials and reports filed with the Securities and Exchange Commission. The Justice Department subsequently conducted a criminal investigation into CDC's foreign business activities and filed charges against it. CDC pleaded guilty to violating 18 U.S.C. § 1343 and 31 U.S.C. § 1059, and judgment was entered against it before the United States District Court for the District of Columbia. United States v. Control Data Corp., Criminal No. 78-00210 (D.D.C.1978). No director or officer of CDC was a named defendant in the criminal action, and the Justice Department agreed not to disclose publicly the details of CDC's illegal payments so as to ensure the safety of CDC employees involved in those payments. CDC submitted uncontested affidavits to the district court stating that none of the named defendants here were directly involved in the illegal payments charged in the criminal action
 
 
 [3]
 The district court distinguished Lasker, reasoning that the public policies underlying the investment company acts could not properly be compared to those underlying the securities registration act involved here. 460 F.Supp. at 1245. Also, the Second Circuit had limited its decision to derivative actions brought against investment companies and did not reach "questions of the exercise of similar power by directors of other types of corporations." 567 F.2d 1212 N.14
 
 
 [4]
 The majority opinion in Lasker indicates that federal preemption considerations, such as the strength of the federal policy involved and the relationship of that policy to the plaintiff's cause of action, are controlling factors in determining the extent to which state law may operate to terminate plaintiff's federal claims. 99 S.Ct. at 1835-37. This reading is reflected in the concurring opinion of Mr. Justice Blackmun. 99 S.Ct. at 1841. Justices Stewart and Powell, however, could not agree with "implications" in the majority opinion that there was "any danger that state law will conflict with federal policy"; and they found "no possible conflict between this generally accepted principle of state law (I. e., the business judgment rule) and the federal statutes in issue." Consequently, they view the issue on remand in Lasker as a narrow one: "whether the state law here applicable recognizes this generally accepted principle and thereby empowers the directors to terminate this stockholder suit." 99 S.Ct. at 1842 (Powell, J., concurring)
 
 
 [5]
 In addition, Lasker is dispositive of Abbey's claim that the district court erred by failing to give notice of the dismissal of the derivative action to other CDC stockholders. The notice provisions of Fed.R.Civ.P. 23.1 do not apply to involuntary dismissals of such actions. 99 S.Ct. at 1841 N.16
 
 
 [6]
 CDC was authorized to establish an independent committee of outside directors by 8 Del.C. § 141(c) which provides in pertinent part:
 Any such committee, to the extent provided in the resolution of the board of directors, or in the bylaws of the corporation, shall have and may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which require it . . . .
 See Michelson v. Duncan, 386 A.2d 1144, 1155 (Del.Ch.1978).
 
 
 [7]
 We are unpersuaded by Abbey's argument that Mayer v. Adams, 37 Del.Ch. 298, 141 A.2d 458 (1958), holds to the contrary. That case did not involve the business judgment rule but dealt with a question of procedure under the Delaware code. The issue presented was whether a cause of action for fraud allegedly committed by a corporation's board of directors may be maintained by a minority shareholder without demand upon the corporation's stockholders collectively pursuant to Rule 23(b) of the Delaware Courts of Chancery Rules
 
 
 [8]
 Several courts have held that § 13(a) does not give rise to a private right to damages for injuries caused by its violation. See In re Penn Central Securities Litigation, 494 F.2d 528, 539-41 (3rd Cir. 1974); McLaughlin v. Campbell, 410 F.Supp. 1321 (D.Mass.1976); Du Pont v. Wyly, 61 F.R.D. 615 (D.Del.1973); Smith v. Murchison, 310 F.Supp. 1079 (S.D.N.Y.1970) (dictum). Cf. Myers v. American Leisure Time Enterprises, Inc., 402 F.Supp. 213 (S.D.N.Y.1975), Aff'd, 538 F.2d 312 (2d Cir. 1976) (no private cause of action under § 13(d) through identical reasoning). The rationale of these decisions is that the sole private remedy for violations of § 13(a) is afforded by § 18(a) of the Act which creates a private cause of action only in favor of persons who have Purchased or sold securities in reliance on false or misleading statements contained in § 13 reports. This rationale gains collateral support from the recent Supreme Court decision in Touche Ross & Co. v. Redington, supra, which found no implied private cause of action under the § 17(a) reporting provisions of the 34 Act in part because of the limited private remedy created by § 18(a)
 
 
 [9]
 The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided. Burks v. Lasker, supra, 99 S.Ct. at 1836 N.5