SONICS INTERNATIONAL,
INC., Appellant,

v.

DORCHESTER ENTERPRISES, INC.
and Coastal Plains, Inc., Appellees.

No. 20211.

Court of Civil Appeals of Texas,
Dallas.

Jan. 4, 1980.

Mike McKool, Jr., Hewett, Johnson, Swanson & Barbee, Dallas, for appellant.

John H. McElhaney, Orrin L. Harrison, III., Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

Before GUITTARD, C. J., and ROBERTSON and STOREY, JJ.

GUITTARD, Chief Justice.

On this temporary injunction appeal the question is whether the trial court abused its discretion in temporarily restraining the controlling stockholder of a corporation from entering into a contract with the corporation by which the controlling stockholder would be paid substantial sums for management consulting services. The suit was brought by another stockholder as a derivative action in behalf of the corporation, and one of the principal questions is whether the plaintiff stockholder has standing to maintain the action. Without passing on the ultimate question of standing, we hold that the showing of standing is sufficient to support the trial court's exercise of discretion in maintaining the status quo until trial on the merits.

### 1. Standing to Sue for Coastal Plains, Inc.

■ The corporation in question is Coastal Plains, Inc., which is engaged in the sale of power transmission equipment. The defendant is Sonics, Inc., which owns slightly more than fifty percent of the voting stock of Coastal. The suit was brought by Dorchester Enterprises, Inc., the other principal stockholder of Coastal. Dorchester owns about eighty-two percent of the equity of Coastal, but much of Dorchester's stock has no voting rights. Dorchester brought this suit without making any efforts to have the suit brought by Coastal's board of directors,

as required by article 5.14(B) of the Texas Business Corporation Act, and it seeks to excuse such efforts by proof that such efforts would have been futile because a majority of the board was allied with defendant Sonics, Inc. On this appeal Sonics does not contend that a demand on Coastal's board of directors was required. Rather, it contends that the board had delegated the decision of whether the suit should be prosecuted to an independent special committee, whose decision not to prosecute it was made in the exercise of sound business judgment, and, consequently, is binding on both Coastal and Dorchester. In support of this contention, Sonics cites *Abbey v. Control Data Corp.*, 460 F.Supp. 1242 (D.Minn.1978); *Lasker v. Burks*, 426 F.Supp. 844, 852 (S.D. N.Y.1977), *rev'd*, 567 F.2d 1208 (2d Cir. 1978), *rev'd*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979); and *Gall v. Exxon*, 418 F.Supp. 508 (S.D.N.Y.1976).

We conclude that the action of the board and its special committee does not defeat plaintiff's standing to seek a temporary injunction. The board did not appoint the special committee until after Dorchester had already filed this suit and obtained a temporary restraining order. Without passing on the effect of the special committee's decision on Dorchester's right to obtain relief on the merits, we hold that the trial court had discretion to reserve that question for consideration at a later stage of the litigation and to determine the standing question for the purpose of the application for temporary injunction according to the situation as it existed when the suit was filed.[1] Consequently, we hold that Dorchester has shown probable standing for the purpose of the temporary injunction. *See Rogers v. Howell*, 591 S.W.2d 932 (Tex.Civ. App.—Dallas 1979, no writ).

### 2. Probable Injury and Adequacy of Legal Remedy

■ Sonics also contends that the court abused its discretion in granting the temporary injunction because the evidence at the

---

1. On the effect of the board's exercise of business judgment not to litigate after a derivative action has been filed, *see Zauber v. Murray*

*Savings Ass'n*, 592 S.W.2d 402 (Tex.Civ.App.— Dallas 1979, no writ).

hearing fails to show that denial of the temporary injunction would cause Dorchester or Coastal immediate and irreparable injury for which Dorchester would have no adequate remedy at law. We cannot agree that the evidence shows abuse of discretion in this respect. As we have already noted, Sonics has control of Coastal by virtue of ownership of more than half of its voting stock. The chairman of Coastal's board of directors is LeRoy Erickson, who is also president and chairman of the board of Sonics. The proposed contract between Coastal and Sonics, which the temporary injunction restrained the parties from signing, provides that Sonics should act as management and financial consultant to Coastal during the period from August 20, 1979, through December 31, 1980, and that for an initial period of 180 days, Erickson should devote his major time and effort toward solving certain specific financial problems of Coastal. Other employees of Sonics would also be available during this initial period. As compensation for these services, Coastal would agree to pay Sonics a monthly retainer of $12,500 until December 31, 1979, an "incentive fee" of 35% of Coastal's pre-tax profits during the year 1980, and additional fees of 15% and 8%, respectively, for two succeeding calendar years.

Thus it appears from the terms of the contract itself that its consummation would obligate Coastal to pay out more than $50,000 in fees, plus a share of its pre-tax profits for more than three years. The effect of payment of these fees on the financial stability of Coastal cannot be determined with certainty. Perhaps the services to be provided by Sonics would be worth the money, but that matter need not be determined before trial on the merits. We cannot say that the trial court abused its discretion in finding that the payment of such fees would be an immediate and irreparable injury to Coastal. There was evidence that Coastal's immediate financial problem was the high interest rate at which it had to borrow money. One of the experts testified that the "last thing Coastal needs" to deal with this problem is a reduced cash flow, such as would be occasioned by payment of the fees in question. The trial court was justified in finding that the contract in question would reduce the cash available to Coastal during the current period of high interest rates, thus causing financial difficulties for Coastal, and, would adversely affect its earnings during pendency of this litigation. Such an impairment of earnings would be difficult to establish precisely if compensation were sought by way of damages at a trial on the merits. Thus, the trial court was justified in concluding that denial of the temporary injunction would result in immediate and irreparable injury for which Coastal and, derivatively, Dorchester, would have no adequate remedy at law.

### 3. Overbreadth of Injunction

■ Sonics also complains that the injunction is overly broad in that it prohibits activities that are lawful and a proper exercise of Sonics' rights. The contract restrains Sonics:

[F]rom directly or indirectly entering into, implementing or creating any contract, accrued or otherwise, or making any payment of money or other consideration with respect to the above stated contract, or any other contract, consulting or otherwise between Sonics or LeRoy Erickson as officer, agent, employee or acting in active concert or participation with Sonics or both, or anyone acting in concert with them, on the one hand and Coastal on the other hand until final hearing in this cause is had and judgment entered by this court.

We agree that this injunction is too broad. It is the obligation imposed by the proposed contract to pay fees to Sonics that raises the issues of unfairness and breach of fiduciary duty which will be determined at the final trial of this case. The principal benefit to Coastal under the proposed contract would be the services of LeRoy Erickson, Sonics' president and board chairman, who is also chairman of Coastal's board. There is evidence that Erickson has unusual talents in the management of financially troubled corporations. As chairman of Coastal's board, he may be presumed to

have an obligation to assist Coastal with its financial problems, and that assistance should not be restrained. If Sonics, as one of the principal stockholders of Coastal, should decide to relieve Erickson of some of his obligations in the management of Sonics so that he might be in a position to provide needed management services for Coastal, as the contract in question evidently contemplates, we see no reason why such an arrangement should be forbidden. Consequently, we modify the injunction by limiting it to restraint of payment of any money or consideration to Sonics by Coastal for the services of Erickson or other Sonics employees pending trial of this case. Thus, we strike from the operative language of the order quoted above the words "entering into, implementing, or creating any contract, accrued or otherwise, or," so that the order will restrain Sonics:

> [F]rom directly or indirectly making any payment of money or other consideration with respect to the above stated contract, or any other contract, consulting or otherwise between Sonics or LeRoy Erickson as officer, agent, employee or acting in active concert or participation with Sonics or both, or anyone acting in concert with them, on the one hand and Coastal on the other hand until final hearing in this cause is had and judgment entered by this Court.

Otherwise, the temporary injunction will remain in full force until the case is tried.

### 4. Recital of Reasons for Injunction

■ Another attack on the temporary injunction is that the order does not "set forth the reasons for its issuance," as required by Rule 683, Tex.R.Civ.P. This rule, as interpreted by the supreme court, does not require that the trial court explain its reasons for believing that the applicant has shown a probable right to final relief, but it does require the court to give the reasons why injury will be suffered if interlocutory relief is not granted. *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex.1971).

■ We conclude that the order in question here sufficiently states why injury will be suffered if the injunction is denied. It recites the contract in full and states that Sonics threatens to "enter into and implement" this contract. It recites that the contract will result in an "interested transaction" and a breach of fiduciary duty by the directors of Coastal, that it will "alter the status quo" and will "tend to make ineffectual a judgment" against Sonics. We construe these recitals as statements to the effect that Coastal would be injured by any payments of money to Sonics under such circumstances and that a judgment against Sonics would not be effective to restore Coastal to its previous situation. Consequently, we hold that the order is sufficient.

### 5. Delay of Trial on Merits

Finally, we think it appropriate to observe that in our view this is another unnecessary interlocutory appeal. We have had frequent occasions to repeat the observation of the supreme court in *Southwest Weather Research, Inc. v. Jones*, 160 Tex. 104, 327 S.W.2d 417, 422 (1959), that the most expeditious relief from an unfavorable preliminary order is prompt trial on the merits. We do not censure appellant or its counsel in this case because we have been assured that counsel sought a prompt trial on the merits. The trial judge, however, declined to set the trial before May 5, 1980, more than seven months after the request for trial setting was made. Apparently, the trial judge disregarded the precedence to which injunction cases are entitled. *Reeder v. Intercontinental Plastics Mfg. Co.*, 581 S.W.2d 497, 499 (Tex.Civ.App.—Dallas 1979, no writ); *Gonzales v. Norris of Houston, Inc.*, 575 S.W.2d 110 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ). Neither is appellant's demand for a jury an adequate explanation for delay because we take judicial notice that juries are available in Dallas County forty-eight weeks in the year.

In fact, we see no reason why this case could not have been tried on the merits at the time it was heard on the application for temporary injunction or shortly thereafter. The suit was filed on June 18, 1979, and a

temporary restraining order was issued. By agreement, the hearing on the application for temporary injunction was postponed until August 2, and the temporary restraining order was continued in force. Depositions were taken and preparations were made for a hearing that counsel describes as "plenary." The statement of facts runs to 375 pages and the transcript to 172. So far as we can determine, the relevant facts have been fully developed. The only additional time required for trial on the merits would have been two hours, more or less, for selecting a jury and whatever time might have been required for preparation of the charge. We see no necessity for the judge to delay final disposition of the merits for as much as nine months, and then to hear the same evidence again. With a little encouragement, the attorneys could have completed the trial on the merits and the case could have been ripe for final disposition on appeal by this time. Consequently, we repeat our previous admonitions to counsel and also to trial judges to use their best efforts to avoid extensive preliminary hearings and interlocutory appeals. These delays and duplicative procedures increase the costs of litigation and should be regarded as luxuries that an overloaded judicial system can no longer afford.

Modified and affirmed.